In re MARRIAGE OF William Joseph
BAISLEY, Appellee,

and

Cheryl Ann Vielle, Appellant.

No. 86CA1110.

Colorado Court of Appeals,
Div. I.

Nov. 5, 1987.

Rehearing Denied Dec. 3, 1987.

Certiorari Denied May 9, 1988.

Edwards, Terrill & Mygatt, P.C., Nancy Terrill, Boulder, for appellee.

Holland & Hart, Julia Hook, Susan N. H. Dixon, Denver, for appellant.

PIERCE, Judge.

Cheryl Ann Vielle, mother, appeals a trial court order awarding permanent custody of her two minor children to their father, William Joseph Baisley. We affirm.

The father and mother, an alleged enrolled member of the Blackfeet Indian tribe, lived as husband and wife outside the boundaries of the Blackfeet Indian Reservation in Montana from September 1982 until their separation in June 1985. During that time, they had two children.

In June 1985, father moved to Boulder, taking the children with him with mother's consent. During the next six months, mother called to speak to the children only three or four times and visited them in Boulder once, but she did not seek their return.

In January 1986, mother filed for dissolution of marriage and sought custody of the children in a Montana state court. On January 21, 1986, father, after having been served with process in the Montana dissolution proceeding, filed a verified petition for custody under the Uniform Child Custody Jurisdiction Act, § 14–13–101, et seq., C.R. S. (UCCJA) in the Colorado court. The Colorado court contacted the Montana court by telephone to determine which forum should exercise jurisdiction over the custody issue. Concluding that Colorado was the home state of the children and that it had the most significant connections with the children, the Montana court declined to exercise jurisdiction over the custody issue. An oral report of this conference was put on record by the Colorado court.

On April 30, 1986, a temporary custody hearing was held in the Colorado court with both parties present. Pursuant to the parties' agreement, father was given physical custody of the children from April 30 through June 11, and mother was given physical custody from June 11 until the time of the permanent custody hearing. The custody hearing was then set for the end of July.

Father returned the children to mother in June. On July 15, 1986, mother sought and received an *ex parte* emergency protective order from the Blackfeet tribal court prohibiting removal of the children from the reservation until the question of the proper jurisdiction on the custody issue as between the Blackfeet tribal court and the Colorado court was determined. The tribal court did not contact the Colorado court at that time or at any time thereafter. On July 18, 1986, counsel for mother filed in the Colorado court a motion to dismiss, or in the alternative, to hear testimony in the Blackfeet tribal court but did not inform the Colorado court of the *ex parte* order until July 24.

On the morning of the permanent custody hearing, July 28, the trial court denied mother's motions, affirming the propriety of its exercise of jurisdiction and determining that the *ex parte* emergency protective order issued by the Blackfeet tribal court was not an exercise of jurisdiction in substantial conformity with the UCCJA and that, in any event, that order had expired. Mother's ensuing request for a continuance was denied by the Colorado court. Without mother present, the hearing proceeded with her counsel participating. Evidence was presented, and permanent custody of the children was awarded to father.

I.

A.

Mother first contends that the Colorado court improperly exercised jurisdiction un-

der the UCCJA. She argues that Colorado was not the children's home state. We disagree. The record completely refutes this contention. Sections 14–13–103 and 14–13–104, C.R.S., were complied with. *See Barden v. Blau,* 712 P.2d 481 (Colo. 1986); *McCarron v. District Court,* 671 P.2d 953 (Colo.1983); *In re Marriage of Severn,* 44 Colo.App. 109, 608 P.2d 381 (1980).

### B.

Mother also contends that the Colorado court's exercise of jurisdiction was improper because custody proceedings were pending in Montana. Again, we disagree.

■ The UCCJA provides that, in general, if two states have concurrent jurisdiction over custody proceedings, exclusive jurisdiction is conferred on the court in which the matter was first raised. *McCarron v. District Court, supra; In re Petition of Edilson,* 637 P.2d 362 (Colo.1981). However, pursuant to § 14–13–107, C.R.S., the state in which the initial custody proceeding is pending may stay proceedings if it determines that another state is the more appropriate forum. *In re Petition of Edilson, supra.* Under Montana law, the decision to decline exercise of jurisdiction is entirely within the discretion of the trial court. *In Re Marriage of Bolton,* 690 P.2d 401 (Mont.1984).

■ The Colorado court contacted the Montana court to determine the most appropriate forum. *See* § 14–13–107, C.R.S. Although a contemporaneous record of this consultation was not made, the Colorado court, in denying mother's motion to dismiss, made findings which reflect that the Montana court declined to exercise jurisdiction. Under these circumstances, the Colorado court did not abuse its discretion by exercising jurisdiction.

Because the Colorado court properly exercised home state jurisdiction under § 14–13–104(1)(a), C.R.S., we need not address mother's contentions concerning jurisdiction under § 14–13–104(1)(b), C.R.S.

### II.

■ Mother contends that the trial court abused its discretion in failing to confer with the Blackfeet tribal court and in denying her motion to hear testimony in the Blackfeet tribal court. We reject these contentions.

Section 14–13–119, C.R.S., permits a party to adduce testimony of witnesses by deposition or otherwise in another state. Section 14–13–120, C.R.S., allows the trial court to request a court of another state to conduct a hearing, to order a party to give evidence under the procedures of that state, or to have social studies made concerning custodial arrangements for a child. *Fry v. Ball,* 190 Colo. 128, 544 P.2d 402 (1975).

Mother knew in May that the custody hearing had been set for the end of July. On July 18, 1986, she filed the motion asking the trial court to allow testimony to be heard in the Blackfeet tribal court. Because her attempt to gather evidence in Montana was not undertaken in a timely manner, there was no abuse of discretion in the Colorado court's denial of her motion.

### III.

■ Mother also contends that the trial court abused its discretion in denying her motion for a continuance of the custody hearing. She argues that she was denied due process of law because she was unable to attend the hearing and because the Montana Department of Social Services had not completed a custody evaluation with respect to her. Again, we disagree.

The grant or denial of a continuance is a matter entrusted to the sound discretion of the trial court, and its decision will not be disturbed on review absent a clear abuse of that discretion. *Butler v. Farner,* 704 P.2d 853 (Colo.1985); *In Re Marriage of Lorenzo,* 721 P.2d 155 (Colo.App.1986).

One of the reasons given for the Montana Department of Social Service's failure to complete its custody evaluation was that the evaluators had tried for two days, but were unable to contact the mother. Mother did not seek a continuance until the morning of the custody hearing. Thirteen

days prior to that date, she had sought and received a temporary protective order from the Blackfeet tribal court which prohibited removal of the children from the Blackfeet Indian reservation and purported to raise in the Blackfeet tribal court the question of the Colorado court's jurisdiction. On July 24, 1986, the Colorado court ordered her to appear at the custody hearing on July 28, but she did not comply.

On the basis of these facts, the Colorado court concluded that mother's request for a continuance was interposed solely for delay, *see Butler v. Farner, supra,* and that it was mother's voluntary absence, not the denial of the continuance or the lack of a completed custody evaluation, which prevented presentation of witnesses and evidence on her behalf. Accordingly, there was no abuse of discretion in the Colorado court's denial of a continuance.

## IV.

Mother next contends that the Colorado court erred in refusing to recognize the Blackfeet tribal court's *ex parte* emergency protective order. We disagree.

The Blackfeet Tribal Law and Order Code, Ch. 2, § 1 (Blackfeet Code) gives a state court and the tribal court concurrent, nonexclusive jurisdiction of all suits concerning a member of the tribe. The Blackfeet Code, Ch. 3, §§ 1 & 2, allows a state court to exercise jurisdiction over marriage and divorce and provides that marriage and divorce shall be governed by state law. These provisions have been interpreted to allow a state court to make determinations of issues that are incident to divorce such as child custody. *See United States ex rel. Cobell v. Cobell,* 503 F.2d 790 (9th Cir. 1974); *Application of Bertelson,* 189 Mont. 524, 617 P.2d 121 (1980).

Mother voluntarily invoked the Montana court's jurisdiction for divorce and, incident thereto, sought determination of the children's custody. Thereafter, the Montana court determined that Colorado was the proper state in which the custody issue should be decided, and the Colorado court properly assumed jurisdiction.

■ Under § 14–13–107(1), C.R.S., Colorado courts may not proceed on a petition for custody if another court is "exercising jurisdiction substantially in conformity with [the UCCJA]" and that court refuses to stay its proceedings. However, a Colorado court is free to determine whether the other court is proceeding in substantial conformity with the jurisdictional requirements of the UCCJA. *Bakke v. District Court,* 719 P.2d 313 (Colo.1986).

■ By the express terms of the Blackfeet Code, the state court was given jurisdiction over divorce and custody matters arising incident thereto. *See United States ex rel. Cobell v. Cobell, supra.* Thus, by failing to contact the trial court where the custody matter was pending, the Blackfeet tribal court did not act in substantial conformity with the UCCJA. *See* § 14–13–107, C.R.S.; *McCarron v. District Court, supra.* Accordingly, we find no error in the Colorado court's refusal to recognize the *ex parte* temporary protective order. *See Bakke v. District Court, supra.*

■ Even if there had been jurisdiction properly exerted by the tribal court, the petition for the *ex parte* order and, implicitly, the order itself acknowledged that the jurisdictional question was being considered in the Colorado court. The order states only that the children were to be confined on the reservation until the jurisdictional problem was resolved. This jurisdictional dispute was determined by the Colorado court, and therefore, once it had determined the jurisdictional issue, the trial court properly declared that the tribal order, even if valid, had expired.

■ We reject mother's contention that federal law preempts state court jurisdiction over custody disputes arising in the context of a Native American divorce proceeding. Mother concedes that the Indian Child Welfare Act, 25 U.S.C. § 1901, et seq., is not applicable to a divorce proceeding in which child custody is in dispute. 25 U.S.C. § 1903; *In re Custody of S.B.R.,* 43 Wash.App. 622, 719 P.2d 154 (1986). Moreover, 25 U.S.C. § 1322 cannot be interpreted to preempt state court jurisdiction in

such matters. Nor are we aware of any other federal authority governing child custody in a dissolution proceeding in which a tribal member was a party that would preempt state court jurisdiction. *See generally Estate of Standing Bear v. Belcourt,* 631 P.2d 285 (Mont.1981).

Judgment affirmed.

METZGER and CRISWELL, JJ., concur.